UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ALBERT CHARLES GEIMER, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | EP-25-CV-00054-MAT |
| FRANK BISIGNANO, COMMISSIONER | § | |
| OF THE SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Albert Charles Geimer ("Plaintiff") appeals from a decision of the Commissioner of the Social Security Administration ("Defendant") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.  On June 20, 2025, upon consent of both parties, United States District Judge Leon Schydlower assigned this case to the undersigned for a memorandum opinion and order pursuant to 28 U.S.C. § 636(c).  For the following reasons, the Court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND & PROCEDURAL HISTORY

Plaintiff was fifty years old at the time the Administrative Law Judge ("ALJ") issued his decision on September 24, 2024. Tr. of Admin. R. [hereinafter, "Tr."] at 23, ECF No. 5-2. Plaintiff completed a high school education and had past relevant work as a meter clerk and warehouse worker. *Id.* On March 27, 2023, Geimer applied for Title II disability insurance benefits. *Id.* 14. He alleged disability beginning March 23, 2023. *Id.* The claim was denied on September 25, 2023, and again upon reconsideration on February 2, 2024. *Id.*

Administrative Law Judge ("ALJ") David Benedict held a telephonic hearing on September 3, 2024, and later issued a decision denying Plaintiff's claims on September 24, 2024. *Id.* at 14-25. Plaintiff requested review of the ALJ's decision, which was denied by the Appeals

1

Council on December 20, 2024. *Id.* at 1. The ALJ's decision became the final decision of the Commissioner at that time.[1] Plaintiff now seeks judicial review of the decision.

On February 21, 2025, Geimer brought this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. He filed his opening brief on May 22, 2025, requesting that the Court vacate the Commissioner's decision and remand his claims for further administrative proceedings. Pl.'s Br. at 20, ECF No. 9. On August 24, 2025, the Commissioner filed a response to Geimer's brief, requesting that the Court affirm the Commissioner's decision. Br. in Supp. of Comm'r's Decision 15 [hereinafter "Def.'s Resp."], ECF No. 20. Geimer filed a reply brief on August 29, 2025. Pl.'s Reply Br. ECF No. 21.

## II.    DISCUSSION

### A.    Standard of Review

Judicial review, under 42 U.S.C. § 405(g), of the Commissioner's decision denying social security benefits is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). Review is limited to a determination of whether (1) the Commissioner's final decision is supported by substantial evidence on the record and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

"Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In applying the "substantial evidence" standard, "the court scrutinizes the record to determine whether such evidence is present," *Sun*, 793 F.3d at 508, but it may not "try the issues

---

[1] *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) ("The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council denied [the claimant's] request for review on the merits.").

*de novo*" or "reweigh the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

Generally, "[w]here . . . the Secretary has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989). However, even if the ALJ commits legal error, "remand is warranted only if the . . . error was harmful." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–08 (2009)); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Furthermore, it is plaintiff's burden to show prejudice or harm from the error. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

B.    **The ALJ's Evaluation Process**

Eligibility for disability insurance benefits on the basis of disability requires that the claimant be "disabled" within the meaning of the Social Security Act. 42 U.S.C. §§ 423(a)(1)(E), 1382(a). Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

… which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 416(i). "A claimant is disabled only if her physical or mental impairment or impairments are so severe that she is unable to do her previous work, and cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work is available in the immediate area where she lives, whether a specific job vacancy actually exists, or whether she would be hired if she applied for such work." *Lopez v. Bisignano*, SA-25-CV-232-OLG (HJB), 2025 WL 4033863, at *3 (W.D. Tex. Dec. 19, 2025) (citing 42 U.S.C. § 423(d)(2)(A)).

In evaluating a disability claim, the ALJ follows a five-step sequential process to determine whether: (1) the claimant is presently engaged in substantial gainful employment; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or medically equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from performing other substantial gainful activity.  20 C.F.R. § 404.1520(a)(4); *Salmond*, 892 F.3d at 817.

In cases such as the instant case where the severity of a mental impairment is at issue, ALJs use the psychiatric-review technique ("PRT"), as described in 20 C.F.R. § 416.920a, at steps two and three of the sequential analysis. The PRT requires ALJs to rate the claimant's limitations resulting from a mental impairment in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* § 416.920a(c)(3). These functional areas are also known as "paragraph B" criteria.  ALJs use a five-point scale to rate these limitations: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If a claimant's limitation in the four areas is "none" or

"mild," then the impairment is "not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities." *Id.* § 416.920a(d)(1). These limitations "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (SSA July 2, 1996).

Between steps three and four, the ALJ determines the claimant's "residual functional capacity" ("RFC"). 20 C.F.R. § 404.1520(e). The RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* § 404.1545(a)(1). The ALJ determines the RFC by examining "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). When using medical opinions as evidence, the ALJ must assess the persuasiveness of such evidence in her opinion. *Id.* § 404.1520c(a). Persuasiveness is based on several factors that the ALJ must consider, but the ALJ is only required to articulate "supportability" and "consistency" in her decision. *Id.* § 404.1520c(b)(2). The ALJ then uses the claimant's RFC in making determinations at steps four and five. *Id.* § 404.1520(e).

"The burden of proof is on the claimant at the first four steps." *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). If the claimant meets this burden, at step five the burden shifts to the Commissioner "to show that there is other substantial gainful employment available that the claimant is capable of performing." *Fraga v. Bowen*, 810 F.2d 1296, 1301–02 (5th Cir. 1987). If the Commissioner satisfies this burden, "the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* at 1302. A determination at any step that the claimant is or is not disabled "ends the inquiry." *Keel*, 986 F.3d at 555; *see* 20 C.F.R. §404.1520(a)(4).

### C.      The ALJ's Findings

Here, ALJ Benedict evaluated Geimer's claims pursuant to the above-mentioned five-step sequential evaluation process. At step one, the ALJ found that Geimer had not engaged in substantial gainful activity since March 23, 2023. Tr. 16. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbosacral radiculopathy, chronic pain syndrome, myalgia, post-traumatic stress disorder ("PTSD"), bipolar disorder, and alcohol use disorder. *Id.* Under the broad functional areas known as the "paragraph B" criteria, he found that Geimer had moderate limitations in all four functional areas. *Id.* 17. At step three, the ALJ concluded that Geimer's impairments, alone or in combination, did not meet or equal the severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Specifically, the ALJ found that Geimer's impairments "do not meet or equal listings 1.15 [(disorders of the skeletal spin resulting in compromise of a nerve root(s))], 1.16[(Lumbar spinal stenosis resulting in compromise of the cauda equina)], and 1.18[(abnormality of a major joint(s) in any extremity)]. The ALJ also explained that Geimer's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria listings 12.04 [(depressive, bipolar and related disorders)] and 12.15 [(Trauma-and-stressor-related disorders)]." *Id.*

Next, before going to step four, the ALJ determined that Geimer retained the RFC to perform "light work" as defined in 20 C.F.R. 404.1567(b) except with the following restrictions: "with standing and/or walking for a total of six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday except the claimant can only frequently balance, occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; understand, remember, and carryout only simple instructions; maintain attention and concentration for no longer than two-hour blocks; occasionally interact with supervisors, co-workers, and the generally public; use judgment to make only simple work-related decisions; perform only occasional

production rate work (assembly line/hourly quota work); and tolerate only occasional changes in the work setting." *Id.* 18.

At step four, the ALJ found, by comparing Geimer's RFC with the physical and mental demands of his past relevant work as a Meter Clerk and as a Warehouse Worker, that Geimer is unable to perform past relevant work as actually or generally performed. *Id.* 23. At step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rules." *Id.* 25. Therefore, the ALJ concluded that Geimer was not disabled under the Social Security Act from March 23, 2023 (his alleged disability onset date), through September 24, 2024 (the date of the ALJ's decision). *Id.*

**D. Analysis**

Plaintiff argues in his brief that remand is required for several reasons: (1) the ALJ erred in assessing Plaintiff's mental limitations by (a) basing Plaintiff's RFC solely on his unsupported layperson's opinion; (b) failing to explain how the RFC accounts for Plaintiff's limitation in concentrating, persisting, or maintaining pace; (c) failing to make an off-task absenteeism determination; and (d) not explaining how the restriction to occasional interaction accommodates Plaintiff's social interaction limitations; (2) by erring in assessing Plaintiff's physical impairments; and (3) improperly basing his subjective symptom analysis through selective consideration of the objective medical evidence. The Court addresses each argument below.

**1) Substantial Evidence Supports the ALJ's Decision**

 **a. The ALJ Did Not Base the RFC on his Unsupported Layperson's Opinion**

Plaintiff argues that the ALJ erred by rejecting all medical evidence and determined Plaintiff's RFC solely on his unsupported layperson's opinion. Pl.'s Br. 7, 9-10. He argues that the

7

ALJ "relied on his own interpretation of the medical and other evidence and assigned additional limitations not based on any medical opinion. Specifically, the ALJ determined that "[t]he claimant's reports of anxiety around others and impaired focus, as well as his history of hospitalizations, were consistent with further limitations than what is contained in Dr. Pack's finding. That evidence also supported some additional understanding, pace, and social limitations that what is contained in Dr. Plasay's finding." (Tr. 23) (emphasis added). Because the ALJ then assessed an RFC with a range of restrictions not aligning with any medical opinion, the ALJ relied on his own determination of the limitations the evidence supports, which is impermissible." *Id.* 9.

"'It is the *ALJ*'s responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.'" *Webb v. Bisignano*, No. SA-24-CV-01034-XR, 2025 WL 2659052, at *7 (W.D. Tex. Sept. 17, 2025) (citing *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (emphasis added)).  "Plaintiff's insistence that the ALJ base his decision on medical opinions cannot be reconciled with the new regulatory framework, which does not require the ALJ to defer to *any* medical opinion." *Id.*; *see* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Even under the prior framework, the Fifth Circuit's decision in *Ripley v. Chater* made clear that the ALJ *could* determine the RFC without a specific medical opinion so long as substantial evidence supported the determination. 67 F.3d 552, 557 (5th Cir. 1995). "The Fifth Circuit expressly stated that the absence of a medical source statement describing the types of work that the applicant is still capable of performing does not in itself make the record incomplete, and the proper inquiry focuses on whether the decision of the ALJ is supported by substantial evidence." *Webb*, 2025 WL 2659052, at *7.

Defendant responds that not only is Plaintiff incorrect but that the ALJ did rely on medical evidence and moreover, his RFC determination was supported by substantial evidence. The record indicates that the ALJ considered Plaintiff's testimony that he suffered from "severe physical and mental impairments . . . [H]e reported anxiety, panic attacks, post-traumatic stress, confusion, depressed mood, mania, and impaired memory and concentration." *Id.* at 19. The ALJ also noted that [a]side from the medical evidence, the claimant's reported activities and abilities are not fully consistent with a finding of disability. The claimant reported being able to perform a wide range of daily activities. The claimant reported being able to tend to his personal care and hygiene, wash dishes, do laundry, sweep, watch TV, play board games, solve puzzles, and socialize with friends and family. He also denied limitations to his ability to sit, reach, use his hands, and understand (6E). Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The undersigned finds the claimant's ability to participate in such activities diminishes the persuasiveness of the claimant's allegations of functional limitations." Tr. 22. The ALJ also relied on Plaintiff's spouse's third party report noting that she "reported the claimant has difficulty focusing, controlling his emotions, organizing, standing, walking remembering, and leaning new information (9E). She reported he will not perform self-care tasks when depressed . . . he lacks motivation, cannot focus on tasks, and gets anxious when driving . . . he does not do things he used to be able to, such as doing household chores, go to concerts, attend sporting events, and socializing." *Id.* at 19.

Moreover, the ALJ considered the prior administrative findings of State agency psychological consultants Byron Pack, Psy.D. and Michal Plasay, PhD. Dr. Pack found Plaintiff has mild to moderate limitations and can perform semi-skilled work, Tr. 60-62, and Dr. Plasay

found Plaintiff has moderate limitations and is limited to unskilled work. Tr. 77-79. The ALJ explicitly noted that Dr. Pack's findings were unpersuasive and Dr. Plasay's were persuasive. *Id.* 23. The ALJ explained that "[t] he claimant's reports of anxiety around others and impaired focus, as well as his history of hospitalizations, were consistent with further limitations than what is contained in Dr. Pack's finding. That evidence also supported some additional understanding, pace, and social limitations that what is contained in Dr. Plasay's finding." *Id.*

Here, there was substantial evidence supporting the ALJ's RFC determination but also contrary to Plaintiff's assertions, medical opinions in the form of the state agency psychological consultant's opinions. There is nothing whatsoever substantiating Plaintiff's claim that medical evidence was ignored. Therefore, the ALJ did not err and the RFC determination as to mental limitations was supported by substantial evidence.

### b. The ALJ Accounted for Plaintiff's Limitations in Concentration, Persisting, or Maintaining Pace

The ALJ determined a moderate limitation in Plaintiff's ability to "concentrate, persist, or maintain pace." [hereinafter "CPP"] Tr. 17. To accommodate this, the ALJ limited Plaintiff to simple tasks and additionally limited Plaintiff to maintaining attention and concentration to no more than two-hour blocks. Tr. 18. Plaintiff argues that the record reflects much more than a moderate limitation in CPP, and the ALJ therefore erred by failing to explain how the RFC accounts for Plaintiff's issues with focus, task completion, and maintaining energy levels due to PTSD, bipolar disorder, and anxiety. Pl.'s Br. 11. He insists that "[t]he ALJ merely stated, without elaboration, that these limitations accommodated Plaintiff's mental impairments, providing no clear rationale or medical opinion that corresponds with the RFC." *Id.*

Here, the ALJ determined PTSD, bipolar disorder, and alcohol use disorder were severe mental impairments. Tr. 16. The ALJ specifically considered whether these impairments met the

10

requirements of §12.04 (depressive, bipolar and related disorders) or §12.15 (trauma and stressor-related disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17. The ALJ concluded that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.15." *Id.* To meet the criteria of §12.04 or §12.15, a claimant would need to have at least an extreme limitation in one paragraph B criteria or a marked limitation in two of the paragraph B criteria. 20 C.F.R. § 404, Subpt. P, App. 1, §§ 12.04B, 12.15B. The ALJ listed Plaintiff as having moderate limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. Tr. 17. Thus even if the ALJ had rated Plaintiff's limitation in concentration, persisting, or maintaining pace as marked, Plaintiff's mental impairments would not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Therefore, even if the ALJ erred, it would be harmless because it still would not have led the ALJ to conclude that Plaintiff was disabled at step three.

Regardless of whether the ALJ rated Plaintiff's limitation in CPP as moderate or marked at step three, the ALJ then had to determine his RFC. In determining the RFC, the ALJ considered Plaintiff's 2023 post-discharge exam where claimant "reported improved concentration, that his memory was okay, and that his energy and mood were good. . . . [Also that claimant,] had a normal mood and affect, exhibited normal speech and thoughts, and had intact attention, concentration, and memory." Tr. 20, 857. The ALJ also considered that at a follow up exam the next month Plaintiff had intact attention and concentration. Tr. 20, 996. Additionally, that Plaintiff indicated "his mood, memory, energy, and concentration were good" in January 2024. *Id.* at 20. The ALJ also indicated that in a mental status exam, "claimant denied having any anxiety and reported his

11

mood, memory, energy, and concentration were good." *Id.* at 21, 2398. Moreover, a May 2024 exam showed Plaintiff had intact concentration, attention, and memory. *Id.* at 21, 2387. The ALJ also noted Plaintiff had intact concentration and attention during multiple mental status exams. Tr. 21, 421, 630-31, 857, 892, 904, 996, 2387, 2398. Plaintiff's reported daily life activities further support the ALJ's RFC determination. The ALJ indicated that Plaintiff's reported daily life activities such as playing board games, solving puzzles, and watching TV support ALJ's finding that Plaintiff does not have a disabling degree of impairment as to CPP. Tr. 22.

Despite Plaintiff arguing that a medical opinion needs to match the RFC, that is not a correct statement of the law. "When making an RFC determination, the ALJ considers the "totality of the evidence in the record," including "medical opinions, . . . medical history, medical signs and laboratory findings, statements about the impact of symptoms, daily activities, medication, and other treatment." *Harner v. Kijakazi*, No. 1:22-CV-05630DH, 2023 WL 1976713, at *5 (W.D. Tex. Feb. 13, 2023) (citing *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); 20 C.F.R. § 404.1529(a)-(d)).      An RFC "need not match a medical opinion so          long          as substantial evidence supports it." *Garner v. Kijakazi*, No. 1:22-CV-0563-DH, 2023 WL 1976713, at *6 (W.D. Tex. Feb. 13, 2023) (citing *Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *8 (W.D. Tex. Sept. 3, 2021) ("[T]he ALJ is not required to have a medical opinion that matches his RFC determination[,]" "so long as substantial evidence supports the determination[.]")). And "[e]ven the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC determination." *Nic R. v. Kijakazi*, No. 3:22-CV-00106-K-BT, 2023 WL 2529930, at *5 (N.D. Tex. Feb. 21, 2023) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Substantial evidence requires "evidence of the effects the claimant's

medical conditions have on her ability to work." *Moreno v. Astrue*, No. 5:09-CV-123-BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010)).

Therefore, an ALJ may interpret medical evidence to determine a claimant's capacity for work if it is available as the ALJ did here. An ALJ may rely on findings of the state-agency consultants and incorporate them into the RFC. *See Jose C. v. Kijakazi*, EP-23-CV-000001-RFC, 2023 WL 8461640, at *8 (W.D. Tex. Dec. 5, 2023). The ALJ's limitation to complete tasks in two-hour blocks is consistent with prior administrative findings. Dr. Plasay's findings on reconsideration were found to be persuasive within the parameters set out by 20 CFR § 404.1520c. Dr. Plasay found that Plaintiff was moderately limited in the ability to maintain CPP for extended periods of time. Tr. 78. But as to RFC, he disagreed, and found that Plaintiff could concentrate on unskilled work for two hour increments sufficiently to complete an 8 hour workday. This is consistent with the RFC determined by the ALJ.

Because the ALJ considered the relevant evidence in the record, including medical examinations, medical records, and the state psychological consultants' reports, when determining Plaintiff's mental RFC, the Court finds that there is substantial evidence to support the RFC determination.

### c. The ALJ Properly Accommodated Plaintiff's Limitations and Made and Adequate Off-Task / Absenteeism Determination

Plaintiff argues that the ALJ's RFC did not accommodate Plaintiff's persistence issues and that even "if a claimant is capable of performing some tasks, the evidence must show that they can do so on a *sustained* basis as required for competitive employment." Pl.'s Br. 11. (emphasis in original). He argues that an RFC accommodating only one or two of the three limitations within CPP when the evidence supports limitations in each area is error and the "ALJ must explicitly consider a claimant's ability to *sustain* work over an entire workday." *Id.* (citing *Bowling v.*

13

*Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). He argues that if the ALJ believed that despite the "ample evidence showing tasking completion difficulties" no persistence restriction was required, the ALJ needed to explain that reasoning." Pl.'s Br. 12.

The "RFC is a measure of a claimant's capacity to perform work 'on a regular and continuing basis." *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).  The Fifth Circuit has observed that "an ability to perform work on a regular and continuing basis is inherent in the definition of RFC." *Dunbar*, 330 F.3d at 672; Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *1-2. "[R]egular and continuing basis means 8 hours a day for 5 days a week or an equivalent work schedule. 20 C.F.R. §§ 404.1545, 416.945; SSR 96–8p." *Palomino v. Barnhart*, 515 F. Supp. 2d 705, 709 n. 5 (W.D. Tex. 2007).

Here the RFC indicates that Plaintiff could stand and/or walk six hours in an eight-hour day and could sit for six hours in an eight-hour day. Tr. 18. Additionally, the ALJ found that Plaintiff could only work in two-hour blocks before requiring a break. Tr. 18. Notably, the ALJ did not determine a need for additional breaks, excessive absences, or other accommodations, therefore Plaintiff's ability to maintain or sustain employment was *subsumed* in the ALJ's analysis and did not require a separate finding. *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).

Here, the ALJ complied with relevant legal standards in determining Plaintiff's RFC. He cited 20 CFR § 404.1545 and SSR 96-8p as part of his consideration in arriving at his determination. Tr. 16. Both of these provisions define RFC as the ability to do physical and mental work activities on a *sustained* basis. Therefore, it is clear that the ALJ understood the nuances of the RFC definition and complied with the requirements of *Dunbar*. 330 F.3d at 672.

Further, the ALJ considered the opinions of State Agency consultants, who were required to "consider [Plaintiff's] ability to perform work activities in an ordinary work setting on a regular

and continuing basis." Program Operations Manual System (POMS) DI 24510.057(B)(1) ("In assessing RFC, consider the individual's ability to perform work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the claimant can perform on a sustained basis based on the evidence available in the case record."). This regular and continuing basis encompasses on-task performance and absenteeism, contrary to Plaintiff's argument. *See id.*; *accord* SSR 96-8p, 1996 WL 374184, at \*1 (July 2, 1996). If the State Agency consultants believed Plaintiff could not sustain work for a regular and continuing basis ("8 hours a day, for 5 days a week") they were required to "explain why" because they "must discuss sustainability" in the RFC when sustainability limitations are present. POMS DI 24510.057(A), (B)(2); *see also* POMS DI 24510.057(B)(3).

Contrary to Plaintiff's argument, the ALJ also properly accommodated Plaintiff's persistence issues. "While the ALJ must *consider* all of Plaintiff's abilities, not all considerations must be articulated in the written opinion; the ALJ must explain how the evidence supports the RFC determination." *Muniz v. Colvin*, No. 3-13-CV-00161-RFC, 2015 WL 6438875, at \*3 (W.D. Tex. Oct. 22, 2015) (citing Social Security Ruling (SSR) 96–8p, 1996 WL 374184 at \*7).  As discussed above, the ALJ considered the relevant evidence in the record and supported his RFC determination with substantial evidence. Specifically, as to persistence, the RFC determination narrative indicates that the ALJ considered that Plaintiff's daily living activities undercut the claims of disabling limitations. Tr. 22. Additionally, despite Plaintiff reporting he would play board games, solve puzzles, and play cards, the ALJ limited his work to two-hour blocks without a break. Tr. 18, 272. Further, the ALJ found that Plaintiff could only occasionally perform production rate work. Tr. 18.

15

Furthermore, the RFC limitations are also in line with Dr. Plasay's findings on reconsideration. Dr. Plasay found that Plaintiff was moderately limited in the ability to maintain CPP for extended periods of time. Tr. 78. But as to RFC, Dr. Plasay disagreed, and found that Plaintiff could "concentrate for two hour increments sufficiently enough to complete an eight hour workday." Tr. 79. This is consistent with the RFC found by the ALJ. As noted above, the ALJ may rely on findings of the state-agency consultants and incorporate them into the RFC. *Jose C.*, 2023 WL 8461640, at *8.

Plaintiff also argues that the ALJ erred by failing to address the vocational expert's ("VE") testimony and analyzing whether Plaintiff's impairments would cause Plaintiff to exceed the RFC limitations. Pl.'s Br. 12. This argument fails, however, as the Fifth Circuit has eschewed formalistic rules of articulation requiring ALJ's to note every piece of evidence that supported their decision and discuss rejected evidence. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Simply because the ALJ did not specifically discuss the VE's testimony does not mean he did not consider it. *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record."); *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (citing *Falco*, 27 F.3d at 163 (5th Cir. 1994)) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."). Accordingly, the ALJ properly made an off-task/absenteeism determination and  accommodated Plaintiff's CPP limitations.

### d. The Occasional Interaction Restriction Accommodated Plaintiff's Social Interaction Limits

The ALJ found Plaintiff's PTSD and bipolar disorder severe and noted a moderate limitation in interacting with others. Tr. 16-17. Plaintiff argues that the ALJ's RFC limitations

allowing for "occasional interaction with supervisors, coworkers, and the public" is unsupported. *Id.* at 18.

So long as the ALJ properly considers a claimant's mental impairments, an ALJ does not commit legal error in excluding limitations from the RFC. *See Hernandez v. Comm'r. of Soc. Sec.*, 748 F. Supp. 3d 442, 448 (W.D. Tex. 2024) ("[A]n ALJ does not commit legal error by declining to include mental limitations in a claimant's RFC, so long as the ALJ's opinion makes clear that he considered the limiting effects and restrictions of all impairments in the RFC analysis."); *Jakobs v. Comm'r of Social Security*, SA-22-CV-01349-OLG, 2023 WL 7138684, at *5–6 (W.D. Tex. Sept. 15, 2023) (holding that the ALJ's omission of mental limitations from the RFC was not a legal error, despite finding mild limitations in the paragraph B criteria at step two and agreeing with a medical opinion that found the same, because the ALJ properly considered the plaintiff's mental impairments); *Boller v. Comm'r, SSA*, No. 421CV01001SDJCAN, 2022 WL 18586837, at *10 (E.D. Tex. Dec. 12, 2022), *report and recommendation adopted*, No. 4:21-CV-1001-SDJ, 2023 WL 1765909 (E.D. Tex. Feb. 3, 2023) ("Thus, unlike in *Castillo*, where the ALJ singularly relied on the non-severity finding in his RFC assessment, the same did not occur here where the ALJ relies on other medical evidence and dedicated multiple paragraphs in explaining his rationale.").

The Commissioner points out that the ALJ found that Plaintiff had a moderate paragraph B limitation in interacting with others. Def. Br. 10. The ALJ explained that while Plaintiff "reported he is easily distracted and struggles to focus on tasks. . . . [The ALJ noted,] the evidence did not support more than moderate limitations in this area of functioning." Tr. 17. The ALJ highlighted that in past exams, "the claimant regularly had intact attention and concentration." *Id.*

Moreover, the "claimant also reported being able to play board game [sic], solve puzzles, do laundry, wash dishes, and count change." Tr. 17.

In crafting the RFC, the ALJ explicitly considered the prior administrative findings of State agency psychological consultants Byron Pack, Psy. D. and Michael Plasay, PhD. The ALJ considered the prior administrative findings of Dr. Byron Pack, who found Plaintiff has mild to moderate limitations and can perform semi-skilled work, Tr. 60-62, and Dr. Michael Plasay, who found Plaintiff has moderate limitations and is limited to unskilled work. Tr. 77-79. Regarding Dr. Pack's findings, the ALJ determined they were not persuasive but only because Plaintiff's reports of anxiety around others and impaired focus supported more limitations than Dr. Pack had assessed. *Id.* Dr. Plasay's findings, on the other hand, were persuasive, though the ALJ also determined the evidence supported *some additional limitations in understanding, pace, and social functioning* in Plaintiff's favor. *Id.*

Additionally, the ALJ noted that Plaintiff reported difficulty interacting with others but found the evidence did not support more than moderate limitations. Tr. 17. Namely because "[d]uring exams, the claimant regularly presented as cooperative and had a normal mood and affect." *Id.* at 17 (citing *Id.* 421, 440, 630-31, 857, 892, 904, 996, 2387, 2398). Additionally, at the reconsideration level, State psychiatric consultant Dr. Plasay determined Plaintiff was not significantly limited in the ability to interact appropriately with the general public, get along with coworkers or peers without distracting them, or maintain socially appropriate behavior. Tr. 78. As explained before, the ALJ found this to be persuasive and supported by objective medical evidence. Tr. 23.

In sum, the ALJ considered the record evidence and concluded greater limitations were warranted as to Plaintiff's social limitations than those suggested by Dr. Plasay. Therefore, the

RFC limitations as to interacting with others are supported by substantial evidence, and the ALJ did not err.

The ALJ's consideration of the record including medical evidence and State Agency medical consultants' reports was sufficient. Plaintiff points to evidence of Plaintiff's interpersonal relationship struggles and stress-related mental health symptoms and insists the ALJ "did not explain why greater restrictions were not warranted and did not address Plaintiff's inability to handle stress as required under SSR 85-15." Pl.'s Br. 9.

SSR 85-15 sets out :

> "Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. Determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult . . . Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment."

SSR 85-15, 1985 WL 56857, at *5-6 (Jan. 1, 1985).

SSR 85-15 does not set out requirements but considerations for the ALJ. Here, the RFC explanation makes clear the ALJ considered Plaintiff's "testimony at the hearing, and in the statements he submitted as part of his Social Security application." Tr. 19. The ALJ also thoroughly discussed Plaintiff's "long history of mental impairments and alcohol abuse." Tr. 20. Additionally, the ALJ stated that he "considered the prior administrative findings of State agency psychological consultants Byron Pack, Psy.D., . . . and Michael Plasay, Ph.D. . . . [he found] Dr. Pack's finding unpersuasive, and Dr. Plasay's finding generally persuasive." Tr. 23. Dr. Plasay specifically noted Plaintiff as moderately limited in the ability to accept instructions and respond appropriately to

criticism from supervisors and not significantly limited in all other social interaction limitations.[2] Tr. 78. Dr. Plasay wrote the following in the Mental RFC Additional Explanation: "Clmt should be able to understand and remember simple and some detailed instructions. Clmt may have moderate intermittent disturbances from mental impairments but can concentrate for two hour increments sufficiently enough to complete an eight hour workday. Clmt evidences ability to interact socially and appropriately with the general public, staff and management. Clmt may have mild adaptive limitations due to mental health sxs [sic] but possesses capacity to make reasonable decisions in the workplace." Tr. 79. The ALJ also noted the State Agency psychological consultants' "findings were well supported by citations to objective medical evidence. Their finding the claimant can perform some work was consistent with the claimant's minimal treatment and exams noting the claimant often presented as cooperative, had a normal mood and affect, exhibit normal thoughts and speech, had good insight and judgment, and had intact attention and concentration." *Id.* Nevertheless, the ALJ factored into the RFC additional limitations that were supported by the record and Dr. Pack and Dr. Plasay's findings. *Id.*

The role of the Court is not to reweigh evidence, *see Chambliss v. Massanari*, 269 F.3d 520, (5th Cir. 2001), or to substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). Additionally, as the Fifth Circuit has "noted time and again, an 'ALJ is not always required to do an exhaustive point-by-point discussion' of the evidence she reviews." *Silva v. Kijakazi*, NO. 22-51045, 2023 WL 3723628, at *1 (5th Cir. May 30, 2023) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). Even if the ALJ erred by not specifically referring to work "stress," any such error was harmless since the ALJ did consider all

---

[2] The other limitations being: "The ability to interact appropriately with the general public," "The ability to ask simple questions or request assistance," "The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." Tr. 78.

medically determinable mental impairments. As such, the ALJ's findings are conclusive, and his decision must be affirmed.

### 2) Substantial Evidence Supports the ALJ's Assessment of Plaintiff's Physical Impairments

Plaintiff argues substantial evidence does not support the ALJ's RFC for his physical impairments. He contends that the ALJ "selectively relied on *only portions* of the medical evidence and ignored critical findings," in crafting his RFC. Pl.'s Br. 16 (emphasis in original). He argues that by "failing to properly consider Plaintiff's physical limitations and include them in the RFC, the ALJ failed to comply with SSR 96-8p." *Id.* at 18. Defendant contends that the ALJ properly considered the evidence in the record and substantial evidence supports the ALJ's assessment of Plaintiff's physical impairments. Def.'s Br. 11.

RFC is defined as the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545; SSR 96-8p. The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley,* 67 F.3d at 557. In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite his physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given to the evidence is within the ALJ's discretion. *See Chambliss*, 269 F.3d at 523 n.1 (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen,* 864 F.2d 333, 336 (5th Cir. 1988). Nor is an ALJ required to discuss each and every bit of evidence as a factor in her determination. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994) (stating the ALJ did not have to "discuss the evidence that was rejected" when evaluating the claimant's complaints of pain). "However, the ALJ must evaluate the impairment once a claimant

proves, by medical signs or laboratory findings, a medically determinable impairment which could reasonably produce the symptoms." *Fernandez v. Colvin*, No. EP-12-CV-00126-ATB, 2013 WL 1729210, at *9 (W.D. Tex. Apr. 19, 2013) (citing 20 C.F.R. § 404.1529(c)).

"The prohibition against cherry-picking evidence is a court-created doctrine and has its roots in the administrative principle that the ALJ must 'fairly evaluate[ ] the competing items of evidence in an even-handed way.'" *Martinez v. Kijakazi*, EP-22-CV-00135-KC-ATB, 2023 WL 2885402, at *9 (W.D. Tex. Apr. 5, 2023) (quoting *Khan v. Saul*, 855 F. App'x 343, 352 (9th Cir. 2021)). When an ALJ improperly cherry-picks evidence, he commits reversible error. *Id.* (citing *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014)). However, not mentioning countervailing evidence does not amount to cherry-picking where the reviewing court can readily glean from the record a proper reason for the omission. *Id.* (citing among others, *Hoelck v. Astrue*, 261 F. App'x 683, 685–86 (5th Cir. 2008) (rejecting claimant's argument that the ALJ impermissibly picked and chose evidence by considering only her higher GAF scores, but ignoring her lowest GAF score, where the ALJ noted in his decision the medical visit in which she received the lowest score, and "the ALJ could have permissibly concluded [that the lowest score] was entitled to less weight")).

"Moreover, to repeat, simply because the ALJ did not discuss the countervailing evidence in his written decision does not mean that he did not consider it." *Id.* (citing *Castillo*, 151 F. App'x at 335 ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence.")). An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). On appeal, "[t]he [proper] inquiry [] is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Id.*

Here, the Plaintiff proved he had medically determinable physical impairments and the ALJ was obligated to consider them. Plaintiff argues "the errors in the physical RFC are most evident given Plaintiff's positive straight leg tests (Tr. 474-84), reduced spinal range of motion (Tr. 949, 2196), positive slump test (Tr. 948), and spinal pain (Tr. 949, 2194)." Pl.'s Br. 16. He argues that Plaintiff was diagnosed with lumbosacral radiculopathy, chronic pain syndrome, and myalgia, among other impairments and while the ALJ cited these conditions in his decision, he erred when he "selectively relied on *only portions* of the medical evidence and ignored critical findings." *Id.* (emphasis in original). Additionally, Plaintiff argues that he "'testified that he was fired from his job in March 2023 because he was not able to complete his duties due to his excruciating back pain, leg pain, and mental limitations. (Tr. 40-41.) His most recent MRI showed a "crack in [his] lower back," and he was recommended for surgery. (Tr. 41.) He uses a heating pad to sit on (Tr. 44-45) and a prescribed back brace (Tr. 274, 293). His physical therapy sessions were too painful for him to complete. (Tr. 46.) Yet none of this was addressed by the ALJ." *Id.*

Defendant responds that the ALJ "discussed Plaintiff's testimony regarding his symptoms. Tr. 19. He noted that Plaintiff alleged severe physical and mental impairments that prevented him from sustaining work activity. *Id.* at 41-42. The ALJ reflected Plaintiff's testimony that he could lift five to ten pounds, could only walk ten to fifteen minutes. *Id.* The ALJ also references the third-party report from Plaintiff's spouse, Tr. 19, indicating Plaintiff could only lift ten pounds and stand for fifteen minutes, Tr. 292." Def.'s Br. 12. Additionally, Defendant responds that the ALJ considered the relevant medical evidence. This includes Plaintiff's history of lower back, shoulder, and lower extremity pain, a 2019 MRI showing two small disc bulges with disc desiccation and no canal or foraminal stenosis. "The ALJ mentioned Plaintiff presented with tenderness and pain with movement of his lumbar spine and positive straight leg raise tests at an examination in January

23

2023. Tr. 19, 392. Again, during an exam in April of 2023, Plaintiff had tenderness and pain with movement of his lumbar spine, as well as positive straight leg raise tests. Tr. 19, 589. The ALJ also stated that Plaintiff had reduced spinal range of motion and strength as well as a positive slump test during his initial physical therapy assessment. Tr. 20, 948-49. The ALJ noted Plaintiff received ongoing treatment from a pain management doctor and examinations noted remarkable findings such as tenderness over his lower spine, pain with spinal movement, and positive straight leg raises. Tr. 20, 1023, 1075, 1080. The ALJ considered these and all other evidence in the record in reaching his decision. Tr. 16, 18, 19, 21, 26-31." Pl.'s Br. 12.

It is clear that the ALJ properly considered all of Plaintiff's medically determinable impairments. Moreover, the ALJ did not pick and choose only evidence that supported his position, and the record as a whole allows a reasonable mind to accept the ALJ's conclusions. The ALJ's decision discusses Plaintiff's symptom testimony. Tr. 19. The ALJ notes that Plaintiff "alleged that he has severe physical and mental impairments that prevent him sustaining work activity." Tr. 19. Specifically, the ALJ wrote Plaintiff "reported severe and constant lower back pain, as well as pain, numbness, stiffness, and weakness of his upper and lower extremities. He reported he can only lift five pounds, stand for 10 to 15 minutes, and walk for 10 minutes. He reported he can only perform chores for five minutes before his back pain becomes excruciating." *Id.* Then the ALJ discussed the third-party report from Plaintiff's spouse which indicated that Plaintiff had difficulty walking and reports that Plaintiff "can only lift 10 pounds, stand for 15 minutes, and concentrate for 10 minutes." *Id.* the ALJ highlights that while this is "not an opinion that requires a persuasiveness analysis, the undersigned considered the report when determining the claimant's functional capacity." *Id.*

24

The ALJ then considered the relevant medical evidence. He notes that "claimant reported a history of lower back, shoulder, and lower extremity pain." *Id.* He continues to describe Plaintiff's treatment for that pain including "pain medications, anti-inflammatory medications and muscle relaxers. The claimant later received injections and a TENS unit, as well as receiving ongoing pain management treatment. In 2019, an MRI of his lumbar spine showed two small disc bulges with mild disc desiccation and no canal or foraminal stenosis." *Id.* The ALJ then examined a January 2023 examination where "claimant had tenderness and pain with movement of his lumbar spine, as well as positive straight leg raise tests, but walked with a normal gait, was able to heel and toe walk, had full range of motion, and had intact strength and sensation." *Id.* The ALJ explained that during an April 2023 examination, Plaintiff "had tenderness and pain with movement of his lumbarspine, as well as positive straight leg raise tests, but walked with a normal gait, was able to heel and toe walk, had full range of motion, and had intact strength and sensation." *Id.*

As to Plaintiff's argument that the ALJ did not discuss all of the record, a review of the decision underlines that the ALJ discussed all relevant parts of the record. The ALJ's decision, as noted above, discusses Plaintiff's "history of lower back, shoulder, and lower extremity pain." Tr. 19. It also details several of Plaintiff's medical examinations discussing the tenderness and pain he felt in his lumbar spine and positive straight leg raise tests. *See* Tr. 19-20. The ALJ also pointed out that in many of his exams, Plaintiff "regularly reported only mild to moderate pain, and reported improved symptoms and functioning with medications and physical therapy." *Id.* (citing Tr. 960, 962, 972, 974, 976, 1022, 1074).

Defendant points out that in his brief "Plaintiff references testimony about MRI results, though he does not reference the actual MRI results." Def.'s Br. 13 (citing Pl.'s Br. 16). In

25

concluding Plaintiff was not disabled, the ALJ specifically discussed a Lower Back MRI finding showing "only mild findings and no stenosis or nerve root impingement." Tr. 21. That MRI also notes that there was no fracture as claimed by the Plaintiff. Tr. 2724. The ALJ recognized that Plaintiff's "spinal impairments are likely to cause some pain, stiffness, weakness, and mobility limitations, as evidenced by exams showing spinal tenderness, pain with spinal movement, reduced strength, and positive straight leg raise tests. To account for such findings, the [ALJ] reduced the claimant to light work with additional postural limitations." Tr. 22.

As to medical evidence considered by the ALJ, he considered the findings of State agency medical consultant "Dr. Michal Douglas, who found the claimant is limited to light work with postural limitations, and Dr. Kim Rowlands, who found the claimant's impairments non-severe." Tr. 22. The ALJ found "Dr. Douglas's findings persuasive and Dr. Rowland's finding [of non-severe impairments] unpersuasive." *Id.* "Dr. Rowland's finding was not well supported as she did not adequately consider evidence noting spinal tenderness and pain. Dr. Douglas's finding the claimant can perform some work was consistent with exams noting the claimant often walked with a normal gait, had full range of motion, and had intact strength and sensation." *Id.*

After reviewing the ALJ's decision and the record, the Court finds that the decision is supported by substantial evidence and the record would allow a reasonable mind to accept the conclusions reached by the ALJ. Therefore, the ALJ did not err.

### 3) The ALJ Properly Weighed the Evidence in Assessing Plaintiff's Subjective Symptoms

Plaintiff argues that the ALJ improperly dismissed his subjective symptoms based on his lay interpretation of the evidence. Pl.'s Br. 18. He contends that "the ALJ's analysis hinges almost entirely on objective medical evidence, failing to properly consider how Plaintiff's PTSD, bipolar disorder, alcohol use disorder, chronic pain, myalgia, and lumbosacral radiculopathy impacts his

daily life and functional disability. This approach contradicts SSR 96-8p, which mandates that 'careful consideration *must* be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.'" Pl.'s Br. 19 (citing SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (emphasis added)).

"Although an ALJ may not discount a claimant's subjective complaints solely because they lack support from objective medical evidence, the ALJ may find those complaints inconsistent with the record as a whole and weigh them accordingly." *Moreira v. Comm'r of Soc. Sec. Admin.*, No. EP-24-CV-21-KC-MAT, 2025 WL 943413, at *5 (W.D. Tex. Mar. 28, 2025) (citing SSR 16-3P, at *4–6, 8). "The ALJ must 'explain which of an individual's symptoms' they found consistent or inconsistent with the evidence, and how they reached those conclusions." *Id.* (citing SSR 16-3p, at *8). "But the ALJ is not 'required to articulate expressly every regulatory factor or reason' underlying the determination." *Id.* (quoting *Parker v. Comm'r of Soc. Sec.*, No. 21-cv-279, 2023 WL 5769347, at *3 (E.D. Tex. Aug. 15, 2023)).

Here, the ALJ did not disregard Plaintiff's symptoms, but found that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were inconsistent with the objective medical evidence. Tr. 21. The ALJ discussed at length the objective medical evidence and other evidence that contradicted Plaintiff's allegations. The ALJ explained that Plaintiff testified he can only stand and walk for 10 to 15 minutes. Tr. 42. However, during exams, Plaintiff regularly walked with a normal gait and was able to heel and toe walk. Tr. 21 (citing Tr. 392, 457, 470, 474, 589, 594, 631, 640, 1054). The ALJ stated that these examinations also noted unremarkable findings such as Plaintiff presenting in no acute distress, having normal extremities, full spinal range of motion, and intact strength. *Id.* The ALJ referenced Plaintiff's testimony that

he experienced "excruciating" pain, Tr. 21 (citing Tr. 41), but pointed out that during exams, Plaintiff regularly complained of only mild to moderate pain, and reported improved symptoms and functioning with medications and physical therapy. Tr. 21 (citing Tr. 960, 962, 972, 974, 976, 1022, 1074).

The ALJ noted that Plaintiff testified he can only sit for a short period of time and less than four hours total during a workday. Tr. 44-45. However, in his function report, Plaintiff denied limitations to his ability to sit. Tr. 273. Plaintiff also testified that "there was a crack in my lower back," Tr. 41, and the ALJ pointed out that imaging of Plaintiff's spine showed only mild findings and no stenosis or nerve root impingement, and there was no fracture. Tr. 21, 2724. Plaintiff testified that his doctor recommended surgery for his back impairment, Tr. 41, but the ALJ noted that there was no evidence he required a hospitalization, surgery, or any other aggressive treatment. Tr. 21.

While the ALJ is not required to discuss every allegation, the above is substantial evidence that Plaintiff's subjective symptom allegations are not entirely consistent with the medical and other evidence in the record. *See Audler*, 501 F.3d at 448 (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986) ("Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, " 'we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.' ")). Additionally, the ALJ did not rely on his lay interpretation of the evidence. As previously described, he relied on the prior administrative medical findings of Dr. Douglas. Tr. 22. Therefore, the Commissioner's decision is supported by substantial evidence and the ALJ did not err.

Plaintiff's argument that the ALJ improperly discounted the Department of Veteran's Affairs' ("VA") 100% service-connected disability does not hold water. "The governing Social Security regulation provides that disability decisions by governmental agencies, such as the VA, are not binding on the Commissioner because those decisions are made according to separate rules." *Lamons v. Saul*, No. EP-20-CV-00094-ATB, 2020 WL 6324322, at *6 (W.D. Tex. Oct. 28, 2020) (citing 20 C.F.R. § 404.1504). Prior to a 2017 regulation amendment, courts held that a VA rating of disability is "evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss*, 269 F. 3d at 522; *see also Loza v. Apfel*, 219 F. 3d 378, 394-95 (5th Cir. 2000) ("A VA rating of 100 percent service connected disability is not legally binding on the Commissioner, but is evidence that is entitled to great weight and should not have been disregarded by the ALJ."). However, since the regulation amendment the Commissioner does not need to "provide any analysis in [the] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504 (binding all Social Security "claims *filed* ... on or after March 27, 2017 ...") (emphasis added). *Lamons v. Saul*, 2020 WL 6324322, at *6. Here, Plaintiff's claim was filed after 2017 and thus fall under the new regulatory framework. Therefore, the ALJ's lack of VA determination discussion is not erroneous.

### III.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED.**

**SIGNED and ENTERED** this 30th day of March, 2026.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE